1

2

3

4

5

6

7                      UNITED STATES DISTRICT COURT

8                    SOUTHERN DISTRICT OF CALIFORNIA

9

10   DIALLO E. UHURU,              )   Civil No. 08-2424-IEG(LSP)
                                   )
11              Petitioner,        )   REPORT AND RECOMMENDATION
     v.                            )   GRANTING RESPONDENT'S MOTION
12                                 )   TO DISMISS SECOND AMENDED
     JOHN MARSHALL, Warden,        )   PETITION FOR WRIT OF HABEAS
13                                 )   CORPUS (DOC. #11)
                Respondent.        )
14   _____ )

15        On December 29, 2008, Petitioner Diallo E. Uhuru (hereafter

16   "Petitioner") a state prisoner proceeding pro se, filed a Petition

17   for Writ of Habeas Corpus pursuant to  28 U.S.C. §2254.[1]  Respon-

18   dent has filed a Motion to Dismiss the Petition ("Motion").

19   Petitioner has filed A "Notice of Motion and Objections to Motion

20   to Dismiss Second Amended Petition for Writ of Habeas Corpus,

21   which the Court construes as an Opposition to the Motion. Peti-

22   tioner has also filed a "Traverse."  Respondent asserts that the

23   Petition is untimely, and that neither statutory nor equitable

24   tolling applies to make the Petition timely.  Petitioner argues

25   that his Petition is timely filed if he receives the benefit of

26   equitable tolling of the statute of limitations.

27        The Court, having reviewed Petitioner's Petition for Writ

28   _____

          [1]The Petition is styled "Second Amended Petition."

1  of Habeas Corpus, the exhibits attached thereto, the Motion to

2  Dismiss, the lodgments submitted by Respondent, Petitioner's

3  Opposition and Traverse, finds that the Petition is barred by the

4  statute of limitations.  Therefore, the Court  RECOMMENDS that

5  Respondent's Motion to Dismiss be GRANTED.

6                                    I

7                          PROCEDURAL HISTORY

8          On February 22, 2000, Petitioner pled guilty to second

9  degree murder while using a gun. (Respondent's Lodgment No. 1 at

10  20, 23, 26-29, Lodgment No. 2 at 1-3) On March 21, 2000, the Court

11  sentenced Petitioner to 25 years to life imprisonment. (Respon-

12  dent's Lodgment No. 1 at 27-29, Lodgment No. 2 at 1) Petitioner

13  did not appeal his conviction or sentence.

14          On November 22, 2004, Petitioner filed[2] a Petition for Writ

15  of Habeas Corpus in the San Diego Superior Court.  The Petition

16  challenged the conditions of Petitioner's confinement.  It did not

17  challenge the constitutionality of his conviction or sentence.

18  (Respondent's Lodgment No. 6)  On January 7, 2005, the Superior

19  Court denied the Petition because it was not signed and it sought

20  relief already being pursued in a Petition for Writ of Habeas

21  Corpus filed in the Los Angeles Superior Court. (Respondent's

22  Lodgment No. 7)

23          On August 9, 2006, Petitioner attempted to file a Notice of

24  Appeal in the San Diego Superior Court.  The Notice of Appeal was

25  stamped "Received But Not Filed." (Respondent's Lodgment No. 8) On

26  August 10, 2006, the Court sent a letter to Petitioner informing

27

28          [2]The Court gives Petitioner the benefit of the "mailbox rule" which deems
        that a petition is constructively filed when it is delivered to prison officials
        for filing. Houston v. Lack 487 U.S. 266 (1988)

1  him that his appellate rights had expired. (Respondent's Lodgment

2  No. 9)

3        On April 3, 2007, Petitioner filed another Petition for

4  Writ of Habeas Corpus in the San Diego Superior Court. (Respon-

5  dent's Lodgment No. 10) On June 1, 2007, the Petition was denied

6  as successive, untimely and without merit. (Respondent's Lodgment

7  No. 11)

8        On June 28, 2007, Petitioner filed a Petition for Writ of

9  Habeas Corpus in the California Court of Appeal. (Respondent's

10  Lodgment No. 12) On October 5, 2007, the Petition was denied.

11  (Respondent's Lodgment No. 13)

12        On October 22, 2007, Petitioner filed a Petition for Writ

13  of Habeas Corpus in the California Supreme Court. (Respondent's

14  Lodgment No. 14) On April 16, 2008, the Petition was denied as

15  untimely, citing In re Robbins 18 Cal. 4th 770 (1998)

16        On December 29, 2008, Petitioner filed the Petition for

17  Writ of Habeas Corpus that is now before this Court.

18                              II

19              PETITIONER'S PETITION IS BARRED

20              BY THE STATUTE OF LIMITATIONS

21    **A.    The AEDPA's One-Year Statute of Limitations.**

22        Respondent argues that the Petition is barred by the Ant-

23  iterrorism and Effective Death Penalty Act's ("the AEDPA") statute

24  of limitations.  The provisions of the AEDPA apply to petitions

25  for writs of habeas corpus filed in federal court after the

26  AEDPA's effective date of April 24, 1996.  Lindh v. Murphy, 521

27  U.S. 320, 117 S. Ct. 2059, 2068 (1997). Because the Petition was

28  filed on December 29, 2008, the AEDPA applies to this case.

1        Prior to the enactment of the AEDPA on April 24, 1996,

2   "state prisoners had almost unfettered discretion in deciding when

3   to file a federal habeas petition."   Calderon v. United States

4   Dist. Court (Beeler), 128 F.3d 1283, 1286 (9th Cir. 1997), cert.

5   denied, 118 U.S. 897 (1998), overruled on other grounds by

6   Calderon v. United States Dist. Court (Kelly), 163 F.3d 530, 540

7   (9th Cir. 1998).  "[D]elays of more than a decade did not neces-

8   sarily bar a prisoner from seeking relief."   Id.

9        With enactment of the AEDPA, a state prisoner's time frame

10  for seeking federal habeas relief was dramatically limited.   The

11  AEDPA amended 28 U.S.C. § 2244 by, in part, adding subdivision

12  (d), which provides for a one-year limitation period for state

13  prisoners to file habeas corpus petitions in federal court.

14  Section 2244(d) states, in pertinent part:

15          (d)(1)   A 1-year period of limitation shall apply to an
            application for a writ of habeas corpus by a person in
16          custody pursuant to the judgment of a State court.   The
            limitation period shall run from the latest of –
17

18               (A)  the date on which the judgment became
                 final by the conclusion of direct review
19               or the expiration of the time for seeking
                 such review;
20
                 (B)  the date on which the impediment to
21               filing an application created by State
                 action in violation of the Constitution
22               or laws of the United States is removed,
                 if the applicant was prevented from fil-
23               ing by such State action;

24               (C)  the date on which the constitutional
                 right asserted was initially recognized
25               by the Supreme Court, if the right has
                 been newly recognized by the Supreme
26               Court and made retroactively applicable
                 to cases on collateral review; or
27
                 (D)  the date on which the factual predi-
28               cate of the claim or claims presented
                 could have been discovered through the

4                                                           08CV2424

1              exercise of due diligence.

2              (2)  The time during which a properly filed appli-
        cation for State post-conviction or other collat-
3       eral review with respect to the pertinent judgment
        or claim is pending shall not be counted toward any
4       period of limitation under this subsection.

5  28 U.S.C.A. § 2244(d)

6       The Ninth Circuit has noted that under 28 U.S.C.A.

7  §2244(d)(1)(A), a conviction becomes final by the expiration of

8  the time to seek review from the highest court, whether or not

9  such a petition is actually filed.  Wixom v. Washington, 264 F.3d

10 894, 897(9th Cir.2001); Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th

11 Cir. 1999).  Direct review of Petitioner's conviction was com-

12 pleted on March 21, 2000.  Petitioner had until sixty days from

13 the date of his conviction to appeal his conviction and sentence.

14 Smith v. Duncan 297 F.3d 809, 812-13 (9th Cir. 2002), Cal. R. Ct.

15 30.1(a)[now Cal. R. Ct. 8.308(a)]  Therefore, on May 22, 2000,

16 Petitioner's conviction became final and the statute of limita-

17 tions began to run.

18      Absent any statutory or equitable tolling, the statue of

19 limitations for Petitioner expired on May 22, 2001.

20           **1. Petitioner Is Not Entitled to Statutory Tolling**

21      The statute of limitations is tolled while a "properly

22 filed" state habeas corpus petition is "pending" in the state

23 court. Under the holding of Nino v. Galaza 183 F.3d 1003, 1006

24 (9th Cir. 1999), the "statute of limitations is tolled from the

25 time the first state habeas petition is filed until the California

26 Supreme Court rejects petitioner's final collateral challenge,"

27 provided the petitions were properly filed and pending during that

28 entire time.

1    The statute of limitations is <u>not</u> <u>tolled</u> from the time a

2    final decision is issued on direct state appeal and the time the

3    first state collateral challenge is filed because there is no case

4    "pending" during that interval.  <u>Nino</u> 183 F.3d at 1006

5    The meaning of the terms "properly filed" and "pending" in

6    <u>Nino</u> have been clarified by the United States Supreme Court.  In

7    <u>Carey v. Saffold</u> 536 U.S. 214 (2002), the Court held that the time

8    between the denial of a petition in a lower California court and

9    the filing of a subsequent petition in the next higher court does

10   not toll the statute of limitations, if the petition is ultimately

11   found to be untimely.  <u>Id.</u> at 223-26.  In <u>Pace v. DiGuglielmo</u> 544

12   U.S. 408 (2005), the Court held that statutory tolling is not

13   available for the period a petition is under consideration, if it

14   is dismissed by the state court as untimely.  <u>Id.</u> at 413.  In

15   <u>Evans v. Chavis</u> 546 U.S. 189 (2006), the Court held that in the

16   absence of a clear indication by the California Supreme Court that

17   a petition is untimely, "the federal court must itself examine the

18   delay in each case and determine what the state courts would have

19   held in respect to timeliness."  <u>Id.</u> at 197

20   The <u>Evans</u> Court gave some guidance in making that determi-

21   nation: federal courts must assume (until the California courts

22   state otherwise) that California law regarding timeliness does not

23   differ significantly from other states which use thirty or sixty

24   day rules for untimeliness and, a six month unexplained delay is

25   presumptively unreasonable.

26   In this case, Petitioner's first petition for post convic-

27   tion relief was filed in the San Diego Superior Court on November

28

1    22, 2004[3]. (Respondent's Lodgment No. 6).  From May 21, 2000 (the

2    date Petitioner's conviction became final) to November 22, 2004,

3    2004, **four years, six months and one day elapsed.**  Therefore,

4    Petitioner filed his first petition for post-conviction relief

5    well over four years after the statute of limitations expired.[4]

6         Thus, Petitioner is not entitled to statutory tolling.

7              **2.    Petitioner Is Entitled to Some Equitable Tolling**
                      **of the Statute of Limitations**

8

9         The one-year statute of limitations is subject to equitable

10   tolling. Calderon 128 F.3d at 1288.  Equitable tolling of the

11   statute of limitations is appropriate where a habeas petitioner

12   shows: (1) that he has been pursuing his rights diligently, and

13   (2) that some extraordinary circumstance stood in his way. Pace v.

14   DiGuglielmo 544 U.S. 408, 418 (2005).  When courts assess a habeas

15   petitioner's argument in favor of equitable tolling, they must

16   conduct a "highly fact-dependent" inquiry. Whalem/Hunt v. Early

17   233 F.3d 1146, 1148 (9th Cir. 2000), Lott v. Mueller 304 F.3d 918,

18   923 (9th Cir. 2002) The extraordinary circumstances must be the

19   "but-for and proximate cause" of the untimely filing. Allen v.

20   Lewis 255 F.3d 798, 800 (9th Cir. 2001).

21        Respondent argues that Petitioner is not entitled to

22   equitable tolling because equitable tolling is only available to

23   petitioners who pursue their rights diligently and that Petitioner

24   did not pursue his rights diligently in this case.  Moreover,

25   ───────────────

26        [3]The Court notes that the November 22, 2004 Petition filed in the San Diego
     Superior Court did not challenge the constitutionality of Petitioner's conviction
     or sentence.  Nevertheless, the Court gives Petitioner the benefit of the doubt
27   by using the November 22, 2004 Petition as Petitioner's first petition for post-
     conviction relief.

28        [4]From August 9, 2006 to October 22, 2007, Petitioner filed numerous
     pleadings in the San Diego Superior Court, Los Angeles Superior Court, California
     Court of Appeal and California Supreme Court.

1   Respondent argues that the evidence presented to the Court shows

2   that Petitioner had ample time to timely file a Petition in this

3   Court and did not do so.

4        Petitioner asserts that his mental illness was an extraor-

5   dinary circumstance beyond his control that prevented his timely

6   filing. Specifically, Petitioner argues that he suffers from

7   paranoid schizophrenia.

8        Respondent was ordered to lodge with the Court, *inter alia,*

9   Petitioner's psychiatric records dated from May 22, 2000 to

10  November 22, 2004. On May 27, 2009, Respondent lodged Petitioner's

11  psychiatric records, as ordered.  Petitioner's claim may qualify

12  as the "but-for and proximate cause" of his untimely filing.

13       In light of Petitioner's contentions of entitlement to

14  equitable tolling and Respondent's refutation of those conten-

15  tions, this Court will conduct the required fact-dependent inquiry

16  of the relevant time period[5] to determine if Petitioner is enti-

17  tled to equitable tolling.  Whalem/Hunt 233 F.3d at 1148

18             **a.   Petitioner's Mental Capacity**

19       Where a habeas petitioner's mental incompetence in fact

20  caused him to fail to meet the AEDPA filing deadline, his delay

21  was caused by an "extraordinary circumstance beyond (his) con-

22  trol," and the deadline should be equitably tolled.  Laws v.

23  LaMarque 351 F.3d 919, 923 (9th Cir. 2003).

24       Therefore, whether the limitations period should be tolled

25  depends on whether his mental illness between **May 22, 2000 and**

26  **November 22, 2004** constituted the kind of extraordinary circums-

27  tance beyond his control that made timely filing impossible. No

28

---

[5]May 21, 2000 to November 22, 2004 (the date Petitioner's conviction became
final through Petitioner's first post-conviction petition for relief).

1   other time period is relevant to the analysis.

2

3              **b.    Petitioner's Psychiatric Records**

4                   (Respondent's Lodgment No. 17)

5   <u>2000 - 2001</u>

6        Petitioner's psychiatric records indicate that from 2000 to

7   2001, Petitioner was prescribed the medications Prozac[6], Zyprexa[7]

8   and Vistaril[8]. During his period, at times, Petitioner reported

9   that he was depressed and appeared anxious and agitated.  Prison

10  psychiatrists diagnosed Petitioner as possibly suffering from

11  paranoid schizophrenia.  However, prison psychiatrists assessed

12  Petitioner's fund of information, intellectual functioning,

13  organization of thought, reality contact and thought quality to be

14  within normal limits.  Further, they found Petitioner's orienta-

15  tion, memory, attention and concentration to be within normal

16  limits.

17  <u>2002</u>

18       In 2002, Petitioner's mental condition appeared to be the

19  same or better than from 2000 to 2001.  Petitioner continued on

20  the same prescribed medications and reported to prison psychia-

21  trists, "I'm Okay," and that he was "doing okay on his medica-

22  tions."

23  <u>2003</u>

24       On August 22, 2003, Petitioner was prescribed the medica-

25  _____

26       [6]Prozac is a drug that is used for treating depression. www.medicinenet.com

27       [7]Zyprexa is a drug that is used to treat schizophrenia.  It is also used in
    combination   with   Prozac   for   treatment   of   resistant   depression.
    www.medicinenet.com

28
         [8]Vistaril is an antihistamine with drying and sedative properties that is
    used to treat allergic reactions. www.medicinenet.com

1 tion Risperdal and Geodon[9] to be added to the medications that had

2 already been prescribed. On September 21, 2003, Petitioner re-

3 ported hearing voices.  However, on October 23, 2003, prison

4 psychiatrists assessed Petitioner's intellectual functioning,

5 organization and association of thought, reality contact and

6 thought quality to be within normal limits.

7 2004

8    Petitioner appeared to be doing well until mid-2004.  On

9 May 28, 2004, correctional officers reported that Petitioner was

10 smearing feces in his cell and urinating on himself.  Shortly

11 thereafter, Petitioner was seen on an emergency visit to a psychi-

12 atrist.  Petitioner reported to the psychiatrist that he smeared

13 feces and urinated on himself so that he could be housed alone

14 without a cell mate.

15    On July 14, 2004, Petitioner reported to prison psychia-

16 trists episodes of "blacking out." The psychiatrists described

17 Petitioner as being disoriented, hostile, depressed, paranoid and

18 with a tangential thought process.

19    In September 2004, prison psychiatrists prescribed Buspar[10]

20 for Petitioner. From September 2004 to late October 2004, Peti-

21 tioner reported he was "doing well, no complaints."  However in

22 late October 2004, prison psychiatrists reported Petitioner to be

23 irritable and menacing.

24    On December 27, 2004, Petitioner reported that he was

25 hearing voices.

26    The Court's review of Petitioner's psychiatric records from

27

28    [9]Risperdal and Geodon are drugs that are used to treat schizophrenia. www.medicinenet.com

   [10]Buspar is a drug that is used to treat anxiety. www.medicinenet.com

1   July 14, 2004 to September 1, 2004, indicates that Petitioner *may*

2   have suffered mental illness that caused him to fail to meet the

3   AEDPA filing deadline. As noted above, on July 14, 2004, Peti-

4   tioner reported to prison psychiatrists that he had episodes of

5   "blacking out."  Prison psychiatrists described Petitioner as

6   being disoriented, hostile, depressed, and paranoid with a tangen-

7   tial thought process.  Giving Petitioner the benefit of the doubt,

8   the Court construes Petitioner's mental illness during that

9   interval to be an extraordinary circumstance beyond his control

10  that made him unable to file a timely Petition for Writ of Habeas

11  Corpus in this Court.  From July 14, 2004 to September 1, 2004, **49**

12  **days** elapsed.

13      However, from May 22, 2000 to November 22, 2004 (other than

14  noted above), Petitioner's psychiatric records do not indicate

15  that Petitioner was mentally incompetent such that any mental

16  condition in fact caused him to fail to meet the AEDPA filing

17  deadline.  In fact, the contrary appears to be true.  During the

18  entire interval when the statute of limitations was not tolled,

19  except for the short interval noted above, Petitioner appears to

20  have had some psychiatric problems, but his intellectual function-

21  ing, organization and association of thought and thought quality

22  was always within normal limits.  Moreover, several times during

23  the period when the statute of limitations was not tolled, Peti-

24  tioner reported that he was doing "Okay," and "Okay on his medica-

25  tions."

26      The Court is cognizant of Petitioner's May 28, 2004 inci-

27  dent in which Petitioner was seen smearing feces in his cell and

28  urinating on himself.  This type of behavior may show mental

    illness or incompetence.  However, here, that is not the case.

1    Petitioner reported to prison psychiatrists that he behaved the

2    way he did to secure a cell in which he did not have a cell mate.

3    Therefore, it appears that Petitioner knew what he was doing at

4    the time, and thought his behavior might secure himself a single-

5    bedded cell. Petitioner's psychiatric records do not indicate that

6    Petitioner's behavior was the result of a mental illness.

7        As a result, Petitioner is entitled to 49 days of equitable

8    tolling.  Therefore, if the Court subtracts **49** days (from July 14,

9    2004 to September 1, 2004) from the **four years, six months and one**

10   **day** that the statute of limitations was not tolled, Petitioner's

11   Petition for Writ of Habeas Corpus was still filed over four years

12   after the statute of limitations expired.

13       The Court finds that Petitioner has failed to establish

14   that he is entitled to sufficient tolling of the statute of

15   limitations pursuant to the doctrine of equitable tolling. Thus,

16   Petitioner failed to file his Petition For Writ of Habeas Corpus

17   with this court within the one-year statute of limitations man-

18   dated in 28 U.S.C. §2244(d)(1)(A).

19                                    IV

20                              CONCLUSION

21       After a thorough review of the record in this matter, the

22   Court has determined that Petitioner has failed to comply with the

23   AEDPA's statute of limitations and that he is not entitled to

24   equitable tolling of the statute of limitations.  28 U.S.C.A. §

25   2244(d).

26        Accordingly, the Court RECOMMENDS that Respondent's Motion

27   to Dismiss be GRANTED.

28        This report and recommendation of the undersigned Magis-

     trate Judge is submitted to the United States District Judge

1   assigned to this case, pursuant to the provision of 28 U.S.C. §

2   636(b)(1).

3        **IT IS ORDERED** that no later than <u>June 29, 2009</u>, any party

4   to this action may file written objections with the Court and

5   serve a copy on all parties.  The document should be captioned

6   "Objections to Report and Recommendation."

7        **IT IS FURTHER ORDERED** that any reply to the objections

8   shall be filed with the Court and served on all parties no later

9   than <u>July 13, 2009</u>. The parties are advised that failure to file

10  objections within the specified time may waive the right to raise

11  those objections on appeal of the Court's order.  <u>Martinez v.</u>

12  <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

13

14

15

16

17  DATED:  May 29, 2009

18

19                                  _____

20                                  Hon. Leo S. Papas
                                    U.S. Magistrate Judge
21

22

23

24

25

26

27

28

                                    13                        08CV2424