1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIALLO E. UHURU,<br><br>                              Petitioner,<br>     vs.<br><br>JOHN MARSHALL, Warden,<br><br>                              Respondent. | CASE NO. 08cv2424-IEG(AJB)<br><br>Order Adopting in Part Magistrate Judge's Report and Recommendation; Granting Respondent's Motion to Dismiss |

Petitioner Diallo E. Uhuru, a state prisoner proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his February 22, 2000 conviction and sentence in San Diego County Superior Court Case No. SDC123050. Respondent filed a motion to dismiss the petition, arguing it was barred by the one year statute of limitations provision of 28 U.S.C. § 2244. On May 29, 2009, Magistrate Judge Leo S. Papas filed a report and recommendation, recommending the Court grant Respondent's motion to dismiss the petition as time-barred. On June 18, 2009, Petitioner timely filed objections to the report and recommendation ("R&R").

Having reviewed all of the relevant pleadings in this case *de novo*, including the psychiatric records lodged by Respondent and the Petitioner, the Court REJECTS Petitioner's objections to the R&R, ADOPTS IN PART the R&R as noted herein, and GRANTS Respondent's motion to dismiss the petition as time barred.

///

## *Procedural History*

Magistrate Judge Papas's R&R accurately sets forth the procedural history of Petitioner's claims. On February 22, 2000, Petitioner pled guilty to second degree murder while using a gun. [Respondent's Lodgment No. 1, at 20, 23, 26-29; Respondent's Lodgment No. 2, at 1-3.] On March 21, 2000, the Court sentenced Petitioner to 25 years to life imprisonment. [Respondent's Lodgment No. 1, at 27-29; Respondent's Lodgment No. 2, at 1.] Petitioner did not directly appeal his conviction.

On November 22, 2004, Petitioner filed a petition for writ of habeas corpus with the San Diego Superior Court. That petition did not, however, attack the constitutionality of Petitioner's conviction or sentence, but instead challenged the conditions of Petitioner's confinement. [Respondent's Lodgment No. 6.] The Superior Court denied the petition on January 7, 2005 because the petition was not signed and it sought relief already being pursued in a petition pending before the Los Angeles County Superior Court. [Respondent's Lodgment No. 7.]

Petitioner attempted to file a notice of appeal in the San Diego County Superior Court on August 9, 2006. The court did not file the notice, however, and instead sent Petitioner a letter on August 10, 2006 informing Petitioner that his time to appeal had expired. [Respondent's Lodgment No. 9.] Petitioner filed another petition for a writ of habeas corpus in the San Diego County Superior Court on April 3, 2007, which was denied as successive, untimely, and without merit. [Respondent's Lodgment Nos. 10 and 11.]

Petitioner filed a petition for a writ of habeas corpus in the California Court of Appeal on June 28, 2007, which was denied on October 5, 2007. [Respondent's Lodgment Nos. 12 and 13.] Petitioner filed a petition for writ of habeas corpus with the California Supreme Court on October 22, 2007 [Respondent's Lodgment No. 14.] The California Supreme Court denied the petition on April 16, 2008, citing In re Robbins, 18 Cal. 4th 770 (1998). [Respondent's Lodgment No. 15.]

Petitioner filed his current petition on December 29, 2008.

## *Discussion*

Magistrate Judge Papas's R&R accurately set forth the legal standards which govern the

determination of whether a state prisoner's federal habeas corpus petition is barred by the statute of limitations provision of 28 U.S.C. § 2244(d). Pursuant to that section, Petitioner was required to file his federal habeas corpus petition within one year after his conviction became final, "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner was sentenced on March 21, 2000, and had sixty days to file an appeal. Cal. R. Ct. 30.1(a) [now Cal. R. Ct. 8.308(a).] Therefore, Petitioner's conviction became final, and the statute of limitations began to run, on May 21, 2000, when the time for him to seek direct review expired. Absent statutory or equitable tolling, Petitioner had until May 21, 2001 to file a federal habeas corpus petition under 28 U.S.C. § 2254.

### A. Statutory tolling

The statute of limitations under § 2244(d) is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2); Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). Petitioner's first state habeas petition was not filed until November 22, 2004, more than four and a half years after Petitioner's conviction became final, and more than three and a half years after Petitioner should have filed his federal habeas corpus petition. Thus, Magistrate Judge Papas's R&R accurately concluded that Petitioner is not entitled to statutory tolling.[1]

### B. Equitable tolling

The one-year statute of limitations is subject to equitable tolling. Harris v. Carter, 515 F.3d 1051, 1054 (9th Cir. 2008). A habeas petitioner is entitled to equitable tolling where he demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance has stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). The determination of whether equitable tolling applies is "highly fact-dependent." Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc). Where a habeas petitioner seeks equitable tolling on the basis of mental illness, the burden is upon the petitioner to demonstrate his mental

---

[1] In his objection, Petitioner appears to argue that he attempted to file an appeal when he first arrived at RJ Donovan State Prison, but gives no information regarding what he attempted to file or with what court.. [Objections, page 3, line 26 through page 4, line3.] Even assuming Petitioner attempted to file something immediately following his conviction, it was unreasonable for Petitioner to make no inquiry regarding the status of that filing for more than four and a half years until he filed his state habeas petition on November 22, 2004. The Court declines to find any statutory tolling arising out of Petitioner's vague statements.

1  condition was an "extraordinary circumstance" which prevented him from timely filing his
2  petition. <u>Laws v. LeMarque</u>, 351 F.3d 919, 923 (9th Cir. 2003); <u>Espinoza-Matthews v. California</u>,
3  432 F.3d 1021, 1026 (9th Cir. 2005).

4  Because Petitioner failed to timely file his federal habeas petition by May 21, 2001, and
5  did not file any State application for post-conviction relief which would have tolled the statutory
6  time period until November 22, 2004, Magistrate Judge Papas's R&R focused on Petitioner's
7  claim of mental illness during this time period. Magistrate Judge Papas reviewed Petitioner's
8  psychiatric records for the relevant time period, as lodged by the Respondent. [Lodgment No. 17,
9  Vol. 1 of 3.] Based upon his review of the psychiatric records, Magistrate Judge Papas found
10 Petitioner may have suffered from mental illness that caused him to fail to meet the filing deadline
11 between July 14, 2004 and September 1, 2004. Thus, Magistrate Judge Papas recommended
12 Petitioner be granted equitable tolling for this 49 day time period. Magistrate Judge Papas found,
13 however, that Petitioner's mental illness throughout the remainder of the relevant time period did
14 not render him mentally incompetent. Thus, Magistrate Judge Papas recommended the Court find
15 Petitioner's mental illness was not an "extraordinary circumstance" which actually caused
16 Petitioner to miss his filing deadline.

17 In his objections, Petitioner argues his ongoing mental illness deprived him of the
18 opportunity to file his petition earlier. Petitioner argues his psychiatric records are consistent with
19 his hearing voices, dealing with the Spirits, and being in a state of shock from the time of his
20 conviction. Petitioner attaches additional copies of some of his psychiatric records to his
21 objections in support of his claim for equitable tolling. Only two pages of those records, however,
22 were not part of the original records reviewed by Magistrate Judge Papas. [Doc. No. 20-2, pp. 4-5
23 (Mental Health Progress Notes dated 9/13/01 and 10/17/01).] After a thorough review of
24 Petitioner's psychiatric records, the Court rejects Petitioner's objections.

25        1.    <u>Appropriate Time Periods of Equitable Tolling</u>

26 The psychiatric records lodged by Respondent are not sequentially numbered as required
27 by Civil Local Rule 5.1(e), and are not in chronological order. Thus, the Court has hand numbered
28 the pages of Lodgment No. 17 for purposes of referring to the record herein. Furthermore, the

Court attaches as Exhibit A to this Order a chart summarizing many of the relevant records in chronological order. Upon review of the records, the Court finds Petitioner is entitled to additional periods of equitable tolling beyond those found by Magistrate Judge Papas in the R&R. Ultimately, however, Magistrate Judge Papas correctly found Petitioner's mental illness did not prevent him from timely filing his habeas corpus petition.

The records reflect that from the time he arrived Richard J Donovan State Prison on March 27, 2000, Petitioner was taking Prosac, Vistaril, and Zyprexa to manage his psychiatric condition. [Lodgment No. 17, Vol. 1, pp. 53-56, 63, 108, 162, 166, 171, 172.] During that time period, staff psychologists and psychiatrists noted Petitioner's mood was depressed, he experienced auditory hallucinations, and he had poor insight and judgment. [Id., pp. 120-122 (Screening Report dated 3/28/00), 109-111 (Mental Health Assessment dated 3/31/00), 171 (Mental Health Progress Note dated 4/11/00), 166 (Mental Health Progress Notes dated 6/23/00), 163-165 (Mental Health Assessment dated 10/23/00).] However, in three separate assessments, Petitioner's cognition was found to be intact and largely within normal limits, with a GAF[2] score ranging from 55 to 65. [Id., pp. 109-111 (Mental Health Assessment dated 3/31/00), 166-167 (Mental Health Progress Notes dated 6/14/00 and 6/23/00), 163-165 (Mental Health Assessment dated 10/23/00).] The Court concludes that Petitioner's mental illness during this time period was not an extraordinary circumstance causing Petitioner to be unable to file his federal habeas corpus petition.

The Court has greater concerns with regard to the impact of Petitioner's mental illness upon his ability to pursue his legal remedies during the time period from March 28, 2001 through November 7, 2001. A Mental Health Progress note from March 28, 2001 indicates Petitioner had been off his medications for a few months, and recommends that he be referred for psychiatric care "ASAP." [Lodgment No. 17, Vol. 1, p. 160.] Another Progress Note from April 10, 2001 states

---

[2]GAF stands for Global Assessment of Functioning, a scale used by clinicians to assess an individual's overall level of functioning. Am. Psychiatric Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS WITH TEXT REVISIONS 32 (4th ed. 2004) (hereinafter DSM-IV-TR). A GAF between 51-60 indicates "Moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with co-workers)." Id. at 34. A GAF between 61-70 indicates "Some mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social occupational, or school functioning (e.g. occasional truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

Petitioner was hearing voices, having visions, and believed his food was poisoned. [Id., p. 161.] A Mental Health Assessment from May 30, 2001, and the accompanying Mental Health Treatment Plan from the same date, indicates that although Petitioner was assessed a GAF score of 55, he continued to refuse medication, was delusional, and had poor memory, attention, and concentration. [Id., pp. 115-119, 179-180.] A Progress Note from June 26, 2001 largely indicates Petitioner was doing okay and his memory and orientation were within normal limits, but further states Petitioner's insight and judgment were both inadequate. The Mental Health Progress Notes from September 13, 2001 state Petitioner acted very bizarre and told the examiner "I think someone inside of me is going to kill me." [Doc. 20-2, p. 4.] On October 17, 2001, Petitioner asked to resume taking Prosac, Vistaril, and Zyprexa, and on follow up on November 7, 2001, Petitioner reported he was "not doing so good." [Id., p. 5.] Contrary to the conclusion of Magistrate Judge Papas, the Court concludes Petitioner's mental illness during the time period from March 28, 2001 through November 7, 2001 likely prevented him from being able to pursue his legal remedies. Thus, the Court will afford Petitioner equitable tolling for this time period.

Thereafter, beginning on November 27, 2001, the Mental Health Progress Notes indicate Petitioner was doing good on his medication, was fairly stable, and his mood was better. [Lodgment No. 17, p. 157 (Mental Health Progress Notes dated 11/27/01 - 12/5/01).] Subsequent records, through June 24, 2003, indicate Petitioner was compliant with his medications, reported fewer auditory hallucinations, was fairly stable, and was in no apparent or acute distress. [Id. 145-156 (Mental Health Progress Notes dated 2/8/02 through 6/24/03), 181-183 (Mental Health Treatment Plans dated 5/29/02).] The Court finds the records from November 27, 2001 through June 24, 2003 do not support a finding that Petitioner's mental illness was an extraordinary circumstance precluding him from filing his federal habeas corpus petition during that time period.

However, beginning in September of 2003, Petitioner's mental state appears to have taken another slight downward turn. A Mental Health Treatment Plan dated September 9, 2003 states Petitioner's mood, affect, and insight were all fair, with concentration very poor. [Id., pp. 176-177 (Mental Health Treatment Plans dated 9/9/03).] The examiner assessed Petitioner a GAF score of

50.[3]  Mental Health Progress Notes from October 24, 2003 and November 14, 2003 indicate Petitioner wanted to change his medication to Zyprexa, was refusing his medication[4], was experiencing blackouts, hearing voices, and experiencing memory problems. [Id., pp. 141-143 (Mental Health Progress Notes dated 10/24/03 and 11/14/03).] Another Progress Note from December 12, 2003, indicates Petitioner's mental illness was essentially untreated because he was not taking his medications. The examiner noted Petitioner's thoughts were disordered, he was hearing the voice of God and expounding on the ills of society, but he was not committable because he endorsed the contract for safety (no harm to self, no harm to others). [Id., p. 140 (Mental Health Progress Notes dated 12/12/03).] Petitioner's mental illness appears to have remained untreated, with Petitioner continuing to experience religious delusions through early 2004. [Id. at 139 (Mental Health Progress Notes dated 3/29/04).]

Then, Petitioner's mental health further declined starting in early June 2004. On June 14, 2004, Petitioner experienced a "falling out" where correctional officers found Petitioner sitting on the toilet in his cell with sunglasses and a beanie cap. [Id. at 39 (Interdisciplinary Progress Notes dated 6/14/04).] As a result of this incident, the psychiatrist once again prescribed Geodon. [Id. at 3 (Physician's Orders dated 6/15/04.] On July 14, 2004, Petitioner again reported blackouts during an interview in which the examiner found Petitioner to be uncooperative, inappropriately dressed, disoriented to time, paranoid, with poor insight and judgment. [Id. at 134 (Mental Health Progress Notes dated 7/14/04).] Petitioner also threatened to murder his cellie. [Id.]

Additional records from August, September, and October of 2004 indicate Petitioner continued to be non-compliant with his medications resulting in constant auditory hallucinations, depression, anxiety, and hostility. [Id.. at pp. 128-133 (Mental Health Progress Notes dated

---

[3] A GAF score in the range of 41-50 indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." DSM-IV-TR at 34.

[4] The notes indicate Petitioner at this time was taking Risperdal and Geodon, which were prescribed for him on August 22, 2003 and October 29, 2003 respectively. [Lodgment No. 17, pp. 10, 14.]

8/10/04, 8/24/04, 9/28/04, 10/12/04, and 10/29/04).] On September 28, 2004,[5] Petitioner was seen in an emergency psychiatric session because he was smearing feces around his cell and urinating on the floor of his cell. [Id. at 128-130; see also Petition, Exhibit A [Doc. No. 1-3], p. 50 (last full paragraph referring to Petitioner's records from September 2004).] Records from November and December of 2004 indicate Petitioner continued to struggle, was hearing voices, was confused, distracted, unkempt, and disheveled, and was "trying hard not to snap." [Id., pp. 173-175 (Mental Health Treatment Plans dated 11/12/04), 96 (Mental Services Request dated 11/24/04), 123 (Mental Health Progress Notes dated 12/27/04).] Contrary to the conclusion of Magistrate Judge Papas, the Court concludes Petitioner's mental health during the entire period of time from September of 2003 through the end of 2004 likely was an extraordinary circumstance prohibiting him from filing his federal habeas corpus petition, entitling him to equitable tolling.

### 2. Calculation of Filing Deadline

The statute of limitations for Petitioner to timely file his federal habeas corpus petition began to run on May 21, 2000, when his time to seek direct review of his judgment of conviction expired. The statute ran for 311 days, until March 28, 2001, when prison psychiatric records reveal Petitioner began to experience severe symptoms resulting from his failure to take his prescribed medications. [Lodgment No. 17, Vol. 1, p. 160 (Mental Health Treatment Notes dated 3/28/01).] Because the Court concludes Petitioner's mental illness during the period from March 28, 2001 through November 27, 2001 likely prohibited Petitioner from pursuing his legal remedies, the statute of limitations was equitably tolled during that time period. However, during the additional 574 day time period from November 27, 2001 through at least June 24, 2003, Petitioner's mental illness was treated, his condition was stable, and he is not entitled to equitable tolling.

Thus, although the Court concludes Petitioner is entitled to a greater period of equitable tolling than set forth in Magistrate Judge Papas's R&R, the Court rejects Petitioner's objections that his mental illness entitles him to equitable tolling for the entire period of his incarceration.

---

[5] Magistrate Judge Papas's R&R refers to an incident on May 28, 2004. Upon review of the records, however, the Court was unable to locate a reference to such an incident in May. Instead, the psychiatric records show the incident occurred on September 28, 2004.

1 | The current petition is time barred.

## *Conclusion*

For the reasons set forth herein, the Court ADOPTS IN PART Magistrate Judge Papas's R&R, finds Petitioner is entitled to additional periods of equitable tolling as noted herein, REJECTS Petitioner's objections, and GRANTS the Respondent's motion to dismiss the petition as time barred. Because the Petition makes a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c), the Court GRANTS a certificate of appealability.

**IT IS SO ORDERED**.

**DATED:  October 7, 2009**

_____
**IRMA E. GONZALEZ, Chief Judge
United States District Court**